```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                              *
   USA,                       * Docket # 2:20-cr-00208-GJP-1
                              *
            Plaintiff,        *
                              * United States Courthouse
             vs.              * Courtroom 11A
                              * Philadelphia, PA
       Omar Bernard,          * February 14, 2023
                              * 2:05 p.m.
            Defendants.       *
   * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

                 TRANSCRIPT OF SENTENCING HEARING
             BEFORE THE HONORABLE GERALD J. PAPPERT
                UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For The Plaintiff:          Robert James Livermore, Esquire
                            U.S. Attorney's Office
                            612 Chestnut Street Suite 1250
                            Philadelphia, PA 19106

For The Defendants:         Natasha Taylor-Smith, Esquire
                            Federal Community Defender
                            Office for EDPA
                            601 Walnut Street, Suite 540
                            West Philadelphia, PA  19106


Audio Operator:             J. Lucini

Transcribing Firm:          Principle Court Reporting
                            Services, Inc., 544 Grove Ave.,
                            Suite 1, Johnstown, PA  15902
                            Telephone: 814-269-4666

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

I N D E X

PAGE

ARGUMENT

    By Ms. Taylor-Smith                                         19

ARGUMENT

    By Mr. Livermore                                           22

DISCUSSION AMONG PARTIES

CERTIFICATE                                                     37

E X H I B I T S

(NONE OFFERED)

1          THE COURT:  Okay. All right Ms. Taylor-Smith I like

2     your Valentine's Day themed dress, very nice.

3          ATTORNEY TAYLOR-SMITH:  Thank you, Your Honor.

4          THE COURT:  This is as close as I could get, not

5     nearly as good. Mr. Livermore you didn't even try.

6          ATTORNEY LIVERMORE:  No.

7          THE COURT:  How are you?

8          ATTORNEY LIVERMORE:  Just fine, thank you.

9          THE COURT:  Good. And Mr. Bernard, how are you?

10         MR. BERNARD:  I am okay. How are you doing, Your

11    Honor?

12         THE COURT:  I am doing fine. So are we -- and Officer

13    Powell, good to see you.

14         MS. POWELL:  Hello, Your Honor.

15         THE COURT:  Good to see you again. We are ready to

16    proceed?

17         ATTORNEY TAYLOR-SMITH:  We are, Your Honor.

18         THE COURT:  Very well. Then this is the case of

19    United States versus Omar Bernard, criminal case 20-208, and

20    we're here today to sentence Mr. Bernard who on July 27th of

21    2021 plead guilty to a one count indictment charging him with

22    possession of a firearm by a felon in violation of 18 United

23    States Code Sections 922G1 and 924E, and to prepare for our

24    proceeding today I have read the presentence investigation

25    report and recommendation prepared by Officer Powell, and thank

her for her thorough work as usual. I've read both parties

sentencing memoranda, which in -- and then the government's

revised memoranda discussing in its view the inexplicability of

the armed career criminal act, which I assume Ms. Taylor-Smith

does not disagree.

ATTORNEY TAYLOR-SMITH:  That is correct, Your Honor.

THE COURT:  And I thought of the irony of it is you

remember we waited all this time for the Third Circuit to

decide the issue that we thought that issue hinged on, and then

-- and then the Wooden issue, and -- and we'll -- we'll get to

that, but I guess before I do would either of you have any idea

from your respective offices how many cases are in now a

similar posture to Mr. Bernard's? I've had -- this is my second

in the last week.

ATTORNEY TAYLOR-SMITH:  Your Honor, I don't think we

have many left. I think my office might have a total of four or

five left that in the pre-Wooden disposition or judication, but

post Wooden sentencing phase.

THE COURT:  Got it. Do you know Bob how many has your

office discussed internally what the pipeline looks like or?

ATTORNEY LIVERMORE:  I have -- I have no idea. I am

not in those conversations so.

THE COURT:  Yeah, okay.

ATTORNEY LIVERMORE:  I would not know.

THE COURT:  Okay, all right. Well, I've -- I've

obviously read the government's revised presentencing

memoranda, and I am up on the issue from a similar memoranda

filed by one of your colleagues, Mr. Livermore last week. Does

anyone have anything else that they would like me to go over

before we begin?

ATTORNEY TAYLOR-SMITH:  Your Honor, my client did

provide me this afternoon with a list of the programming that

he is participated in, in the prison. I believe he would like

the court to be aware of that. I am not sure I -- I believe

that Ms. Powell probably had access to it, but I am not sure

that it was listed in the presentence report so I -- I would

like the court to at least be aware of it.

THE COURT:  Absolutely.

ATTORNEY TAYLOR-SMITH:  Copies to counsel. May I

approach?

THE COURT:  Yeah, thank you, very good thank you.

Well, then Mr. Lucini if you could please swear in Mr. Bernard,

and we can begin.

THE CLERK:  Please raise your right hand.

OMAR BERNARD, DEFENDANT'S WITNESS, SWORN

THE COURT:  Thank you, Mr. Bernard, you can sit down.

And so to prepare for today as always we will do this in a

three step process. First we will calculate the applicable

range under the advisement re-sentencing guidelines tracking

the presentence investigation report, and discussing -- you

1  know the one issue that apparently will require a revision to

2  the recommended offense level, next we would consider any

3  motions for departures, and if granted state how those might

4  affect the guideline calculation, though there are no motions

5  for departures in the case, and third spend the balance of our

6  time considering the advisory guideline range in conjunction

7  with the statutory factors listed in 18 United States Code

8  Section 3553A, so, Ms. Taylor-Smith have you and Mr. Bernard

9  reviewed the presentence report including the revisions that

10 were made on October 26, 2021, and then on February 6th of this

11 year?

12       ATTORNEY TAYLOR-SMITH:  Your Honor, I did go over the

13 presentence report with him and the addendum after the

14 government it's additional sentencing memoranda.

15       THE COURT:  Very good. And Mr. Bernard, did you read

16 the presentence investigation report any revisions to it and

17 discuss those with your lawyer?

18       THE WITNESS:  I went over it, but I never read it.

19       THE COURT:  You can move that mic closer to you.

20       THE WITNESS:  I never read it myself, but I went over

21 -- I went over it downstairs.

22       THE COURT:  You went over it with your lawyer. Would

23 you like to read it?

24       THE WITNESS:  Yes.

25       THE COURT:  All right. Why don't we take some time

1 and allow you to then go over that with your -- you can read

2 that and we'll take five. Yeah, Mr. Livemore if you wish to

3 step out that's fine, and if you guys need time I can step out

4 too.

5 (RECESS)

6         THE COURT:  I did have one question.

7         ATTORNEY TAYLOR-SMITH:  Yes, Your Honor.

8         THE COURT:  That occurred to me. In addition to just

9 reading it over there at counsel table, you previously

10 discussed it with Ms. Taylor-Smith; right?

11         THE WITNESS:  Yes, Your Honor.

12         THE COURT:  Okay. And have you had enough time to

13 discuss the presentence investigation reports and ask your

14 lawyer any questions you might have?

15         THE WITNESS:  Yes, Your Honor.

16         THE COURT:  All right. Is there anything further

17 you'd like to take up with your lawyer, or ask your lawyer

18 about the presentence report before I continue?

19         THE WITNESS:  No, Your Honor.

20         THE COURT:  You're good to go?

21         THE WITNESS:  Yes, sir.

22         THE COURT:  All right, very well, thank you. Did

23 either side -- now Mr. Bernard, I'll -- I'll -- let me follow

24 up one last follow up. In your review of the report or your

25 discussions with the -- with your lawyer about the presentence

investigation reports. Did you notice any errors or material facts that you felt were left out of the report? And that's separate from a legal issue that your lawyer is going to talk to me about.

ATTORNEY TAYLOR-SMITH:  Your Honor, he said that the guidelines still said 180 to 210, and obviously it was our position that the guidelines were different so that was the only thing --.

THE COURT:  Yeah, understood and that's -- that's the legal issue that I was referring to.

THE WITNESS:  Okay.

THE COURT:  I'll take that up in just a few minutes here. Other than that did you see any mistakes or facts that you thought were left out?

THE WITNESS:  No, sir.

THE COURT:  Okay, thanks. Did either side see the need for any corrections? Not objections, but any -- any -- did either counsel have any corrections?

ATTORNEY TAYLOR-SMITH:  No, Your Honor.

THE COURT:  Okay.

ATTORNEY LIVERMORE:  Nothing.

THE COURT:  Very good. So then let's take up first -- first of all we have the one issue, I believe the only issue and objection to the extent that both sides have a formal objection to the PSR is to the Chapter 4 enhancement, which is

discussed at paragraph 22, and then the affect that would have

on the other paragraphs and the guideline range; correct?

ATTORNEY TAYLOR-SMITH: Yes, Your Honor.

THE COURT: Okay. So with the exception of that

objection as to all of the uncontested issues I can find that

there are no factual issues in dispute and can adopt the

recommended findings of fact in the presentence investigation

report as the court's findings of fact today, so, then let's

then put that on hold just for a second until we get -- well

why don't we jump to it now. So the current presentence

investigation report at paragraph 22 adds a three level in

essence, and makes -- excuse me, four levels and makes the

offense level 33, and it does so based on the fact that Mr.

Bernard at least in the probation office's eyes at the time of

the report had three prior convictions, at least three prior

convictions for serious drug offenses, therefore, qualifying

him as an armed career criminal and subjecting him to an

enhanced sentence under 18 United States Code Section 924E, and

that raised his adjusted offense level from 29 to 33, and then

obviously that affected the total offense level in paragraph 25

as well, so, Mr. Livermore I've read your revised memoranda --

memorandum, excuse me, but if you could just summarize why in

the government's view Mr. Bernard should not be subject to the

Chapter 4 enhancement, and that we should then eliminate

paragraph 22 and -- and adjust the other paragraphs

accordingly?

ATTORNEY LIVERMORE:  Yes, of course, in the view of the Attorney General of the United States, Special General of the United States in Wooden versus the United States in that supreme court decision which was just came out last year the -- the court suggested that perhaps the -- this armed career criminal provision these prior convictions that we have to prove that we would have to prove that in front of a jury, over the last many years since I've been doing this over the last 20 years it's the court's judge who makes the finding of fact in terms of whether someone is an armed career criminal or not. The Attorney General has determined that that's something now going forward will have to prove in front a jury, in this case for Mr. Bernard -- Mr. Bernard pleaded guilty. He did not as part of that guilty plea --.

THE COURT:  Prove in front of a jury or have him admit it?

ATTORNEY LIVERMORE:  Or have him --.

THE COURT:  Yeah.

ATTORNEY LIVERMORE:  Of course, and this was the case here Mr. Bernard pleaded guilty, but did not make those admissions because this wasn't the law at the time, so, therefore, we are in a position here where it's the government's position that if -- if the armed career criminal enhancement is applied to Mr. Bernard that would be in

violation of his 6th amendment rights, so it's the government's
position that that enhancement not be applied in this sense.

THE COURT: So when again was Wooden? When in '22; do
you recall? Was it later in the year? Do you recall? If not
that's okay.

ATTORNEY LIVERMORE: I believe it was early in the
year because I did read, there was some preliminary guidance,
and there was some final guidance. I think the final guidance
came out last summer, so, I believe it was earlier in the year.

THE COURT: Okay. I mean is this the latest version
of the type of logic that gave us the categorical approach or?
I mean the question I have is so for example here we have dates
of arrest, dates of conviction, they're taken from public
records and or judicial documents that the court can take
judicial notice of, there are no objections to any of those
facts. Is anyone -- is the government to your mind concerned
that this is an overly cautious interpretation of this case
that's making us kind of do this dance, and -- and is there --
how is this going to be remedied? Are there going to be other
circuits that are going to take it up or henceforth prosecutors
will just put it in the guilty plea agreement and going forward
we -- we won't have this problem anymore?

ATTORNEY LIVERMORE: Going forward we're not going to
have this problem.

THE COURT: Yeah.

1       ATTORNEY LIVERMORE:  Either people are going to --
2   it's going to be either in the plea agreement or we're going to
3   have to prove it up with a jury, in the same way and if you
4   think about it you compare the drug offenses for example. If I
5   wanted to impose a five year, ten year, whatever mandatory
6   minimum sentence that has get proved to a jury, so, --.
7       THE COURT:  Yeah, and the fact of a prior conviction
8   right, where you in a stipulation you'd have to enter in the
9   certified copy of the conviction.
10      ATTORNEY LIVERMORE:  So it is consistent in that
11  approach -- you know in terms of -- in terms of the situation
12  such as this one here where Mr. Bernard pleaded guilty before
13  Wooden came out, and how that particular sentence should be
14  handled. I -- I would really defer to the Attorney General over
15  my own personal analysis. I know this is going to come as a
16  shock to the court, but I am -- I am not a constitutional
17  scholar, and I would suggest the court listen to the Attorney
18  General and the Solicitor General who thought a lot more about
19  the 6th amendment on these points than I have.
20      THE COURT:  Yeah, okay. What if I don't agree with
21  him?
22      ATTORNEY LIVERMORE:  Well, that's up to you and I
23  mean there have been instances where -- where district court
24  judges have disagreed with them, and they have still imposed
25  that particular penalty, but --.

1          THE COURT: And I assume those went up on appeal?

2          ATTORNEY LIVERMORE: I -- I don't know the status?

3          THE COURT: Not that I am asking for one here. I mean

4 I'll -- I'll do what I am compelled to do.

5          ATTORNEY TAYLOR-SMITH: Your Honor, it would lead to

6 an appeal in -- in my case because I think I might have the

7 only district court judge who made his own determination, and

8 the government joined in my appeal.

9          THE COURT: One of my colleagues?

10         ATTORNEY TAYLOR-SMITH: That is correct.

11         THE COURT: Okay. Well, look I -- I -- from what I

12 know of the Wooden case and at least the interpretation of it

13 that's contained in the government's revised sentencing memo

14 which I very much appreciate if I hadn't said that before. I --

15 I think this is of dubious I -- I think the way forward here by

16 the government based on this decision is a bit dubious, and I

17 am not sure I agree with it, but I am certainly not going to

18 put myself in a position where I have the government and the

19 defense agreeing that packet does not apply to Mr. Bernard.

20 When at the end of the day I think we can impose a sentence

21 that is sufficient for the -- but -- but -- you know for the

22 purposes of sentencing so I -- I'll sustain the joint

23 objection, and will eliminate the Chapter 4 enhancement, so,

24 we'll in essence strike paragraph 22 to the extent we have to

25 renumber subsequent paragraphs. We -- we can do that, and then

1 let's then calculate that in its new form, and then I assume as

2 in last week Ms. Powell there will be other paragraphs later on

3 in the PSR which we'd have to strike or amend accordingly, but,

4 okay, so objection sustained, and then let's quickly move

5 through the offense level computation to which there are no

6 objections, and the base offense level is 26 under 2K2.1 with

7 the additional provisions under 2k2.1A1A small I because one of

8 the guns was a semi-automatic firearm capable of accepting a

9 large capacity magazine and the defendant committed the instant

10 offense subsequent to sustaining at least two felony

11 convictions for controlled substance offenses, and obviously we

12 can still say that Mr. Livermore, Wooden doesn't affect our

13 ability to make to -- for purposes of that enhancement that he

14 sustained at least two felony convictions?

15          ATTORNEY LIVERMORE:  I believe that's correct.

16          THE COURT:  Yeah.

17          ATTORNEY TAYLOR-SMITH:  Your Honor, that's -- that's

18 correct because Wooden does not address the guideline

19 specifically that that provision specifically.

20          THE COURT:  Got it. So we start with 26. We add two

21 levels because the offense involved three firearms, so, that's

22 a two level increase under 2K2.1B1A. We add another level

23 because two of the guns were reported stolen, which would

24 ordinarily lead to a two level increase, however, for the

25 reasons explained in paragraph 17 we can only apply one level

increase in this situation, so, that gives us a -- an adjusted
offense level subtotal of 29, as mentioned we are not applying
the four level enhancement for armed career criminal, so, from
29 we deduct a total of three for acceptance and responsibility
and timely notification, very liberal definition of timely as I
recall in this case, but nonetheless the government has agreed
to provide that the probation office has agreed to recommend
it. I will agree to accept it so 29 minus three total offense
level of 26. We can then turn to Mr. Bernard's criminal
history. He has one juvenile adjudication when he was 17 years
old drug related charges adjudicated delinquent in January of
2000, no criminal history points, and then eight prior adult
criminal convictions starting at the age of 18, as described in
paragraph 28 a drug related offense here in -- in Philadelphia
County. The defendant plead guilty was sentenced to probation,
but then his probation was eventually revoked, and he was
sentenced to 11 and a half to 23 followed by more probation,
his probation was revoked a second time sentenced to not less
than 11 and a half no more than 23 months again followed by six
years of probation, which then expired in June of 2014, three
criminal history points for that first conviction that that was
for the sale of approximately 1.1 grams of crack cocaine in the
city of Philadelphia in May of 2000. Second criminal adult
criminal conviction was again a drug related charge to which
the defendant plead guilty in August of 2000, and there are

three criminal history points which go with that conviction.
This was another conviction where the defendant was sentenced
to probation, but his probation was revoked and then sentenced
to 18 to 36 months. The defendant also then absconded from the
community correction center to where he was paroled and
recommitted as a parole violator two times, and ordered to
serve 24 months of back time that too is for drug sales of
approximately 1.8 grams of crack in the city of Philadelphia.
The third adult criminal conviction is described in paragraph
34 there are no criminal history points which attend to this
conviction. This too was a drug related charge to which the
defendant plead guilty in November of 2000, probation revoked
probably for the same reasons as probation was revoked in prior
case, and again, yeah, paroled to a community correction center
declared delinquent after absconding, recommitted as a parole
violator etcetera. That was also for the sale of a small amount
of drugs .20 grams of crack in the city of Philadelphia. The
defendant was next found guilty in December of 2002 for selling
roughly 1 gram of crack cocaine in the city of Philadelphia,
sentenced to one and a half to three years, paroled to a
community -- the community correction center absconded from the
community correction center as we've learned in the prior
convictions, and then again recommitted as a parole violator.
Next in paragraph 38 this was a gun charge. The defendant was
found guilty of firearms not to be carried without a license

and carrying firearms on public streets or public property,
again here in the city of Philadelphia, sentenced to not less
than two nor more than five years of imprisonment, three
criminal history points for that conviction, which then result
in three criminal history points as I mentioned. Next in
paragraph 42 the defendant plead guilty to disorderly conduct
in Bucks County, Pennsylvania that was in October of 2013 for
the possession of marijuana at a hotel in Ben Salem, no
criminal history points. Next in 2017 when the defendant was
now 34 he plead guilty to drug related charges in Luzerne
County, Pennsylvania specifically Wilkes-Barre for possessing
just under 2 grams of crack cocaine, 20 small bags of marijuana
and cash, sentenced to 18 to 48 months of imprisonment and
three criminal history points. Finally paragraph 48 the
defendant plead guilty in September of 2018 to possessing a
small amount of Marijuana this was also in Wilkes-Barre in
Luzerne County, Pennsylvania and one criminal history point
went with that conviction, so, we have a total -- subtotal
criminal history score of 13 to which we add two points under
481.1D because the defendant committed this offense while under
parole for one of his state charges, however, and so total
criminal history score of 15 gives us a criminal history
category of Roman six. We can then just go on and strike
paragraph 53 which is no longer applicable, but which in any
event wouldn't have changed the criminal history category, but

1  we do now have a new total offense level of 26, and a criminal

2  history category of Roman six, which under the sentencing table

3  gives us a guideline range of 120 to 150 months incarceration,

4  but there is a statutory maximum penalty that's applicable here

5  making Mr. Bernard's effective guideline range 120 months,

6  okay. Any questions, comments, disagreements, objections with

7  respect to where we ended up at 120 months?

8          ATTORNEY LIVERMORE:  Agreed.

9          ATTORNEY TAYLOR-SMITH:  Your Honor, no objections,

10  however I thought that the court said that there were eight

11  adult convictions.

12          THE COURT:  Yeah, did I miscount?

13          ATTORNEY TAYLOR-SMITH:  I think there might be seven.

14          THE COURT:  Okay. Let me -- well let's get that right

15  then.

16          ATTORNEY TAYLOR-SMITH:  Unless I am missing one.

17          THE COURT:  So paragraph 28 is one; right?

18          ATTORNEY TAYLOR-SMITH:  That's correct.

19          THE COURT:  Paragraph 30 is two.

20          ATTORNEY TAYLOR-SMITH:  That's correct.

21          THE COURT:  Paragraph 34 is three.

22          ATTORNEY TAYLOR-SMITH:  That's correct.

23          THE COURT:  Paragraph 36 is four.

24          ATTORNEY TAYLOR-SMITH:  That's correct.

25          THE COURT:  Paragraph 38 is five.

1    ATTORNEY TAYLOR-SMITH:  That's correct.

2    THE COURT:  Paragraph 42 is six.

3    ATTORNEY TAYLOR-SMITH:  That's correct.

4    THE COURT:  Paragraph 44 is seven.

5    ATTORNEY TAYLOR-SMITH:  That's correct.

6    THE COURT:  And paragraph 48.

7    ATTORNEY TAYLOR-SMITH:  Thank you, Your Honor, I

8 missed the small possession of marijuana. I apologize.

9    THE COURT:  No problem, no problem. Okay so we have a

10 guideline range of 120 months. No motions for departures. Ms.

11 Taylor-Smith obviously read your memo, but happy to hear now

12 for -- from you on behalf of Mr. Bernard.

13    ATTORNEY TAYLOR-SMITH:  Your Honor, would you like me

14 to approach the podium?

15    THE COURT:  I typically do, yeah, if that's all

16 right.

17    ATTORNEY TAYLOR-SMITH:  It's fine. Your Honor, I am

18 not going to be long before this court because you had an

19 opportunity at this point in time to read my sentencing

20 memorandum, the sentencing memorandum of the government, along

21 with the presentence report and has you've done at this point a

22 thorough analysis of my client's prior criminal history. I

23 would just like to point out to the fact that my client's

24 personal history characteristics while before the court for his

25 criminal activity it didn't begin there. I think I detailed

extensively in my sentence memorandum the trauma and the -- you
know mental, emotional abuse that Mr. Bernard suffered as a
child and how that impacted the individual that ultimately
appears before this court. In 2013 when Mr. Bernard was shot by
two bullets by unknown assailants it sent him reeling. He
delved back into a drug addiction that he just did not have the
where with all to contain on his own, and albeit the court
system had provided some outlet for him to -- to get treatment,
drug addiction is a disease and Mr. Bernard was not cured of it
as of the time that he committed the instant offense. The
presentence report notes that he was high at the time that he
committed the instant offense, and Mr. Bernard has noted to me
that he stayed high because it was the only way he could get
over the fear that he had on a regular and consistent basis
that individuals unknown to him were someday going to harm him,
and that was obviously born out by the fact that he was shot
back in 2013. I will tell you that Mr. Bernard and I have had a
torturous relationship. The court has received many pro se
communications from Mr. Bernard, but the court might note that
those communications have gone from angry and poor judgment to
really the most recent one just not -- you know wanting to put
forth what he believed to be the law, and in the last instance
he was correct. I had spoken to him about Wooden prior to him
filing the motion, but he wanted to make sure that the court
was aware that Wooden had been decided. The motions that he has

filed before the court most recently have taken a different

tone as it relates to who he is and also who he wants to be.

Mr. Bernard is now working on himself because it's the best

that he can do. I'd ask the court to consider sentencing him or

giving him a sentence that is sufficient, but not greater than

necessary to meet the sentencing goals of 3553A, keeping in

mind that Mr. Bernard will have to go back to state custody to

take care of the parole violation, and if this court makes a

determination that a guideline sentence is what is appropriate

in this case I would ask the court to consider making it

concurrent to any sentence that he might serve from the state

parole board, thank you.

THE COURT:  Thank you. Can I do that, Natasha? I've

had that issue before. I don't know what their sentence is

going to be.

ATTORNEY TAYLOR-SMITH:  That's correct.

THE COURT:  Wouldn't that be for them to -- to do it

concurrent?

ATTORNEY TAYLOR-SMITH:  You can -- you can now make

your sentence concurrent to any sentence to be imposed. I don't

remember the name of the case, but before the court imposes

sentence I will find it, but that is now an option for the

court.

THE COURT:  Okay. Mr. Bernard, I'd like to hear you

from you at this time. If you'd like to say a few words.

1          THE WITNESS:  Yes.

2          THE COURT:  Come on up, sir.

3          THE WITNESS:  Good morning, Your Honor.

4          THE COURT:  Hi, sir.

5          THE WITNESS:  I would like to take full

6    responsibility for my actions. I would like to apologize to my

7    family. I would like to apologize to my community and I would

8    like to apologize to the courts. I am not trying to justify my

9    wrong doings, but being a victim of -- of a robbery and also

10   shot in the process has led me to being diagnosed with PTSD and

11   anxiety, which I take psych meds for. I have to make better

12   decisions in life that will equal to positive things. I have a

13   son in which he has son that is looking up to me, so, I ask the

14   court can you please have leniency on me so I can be able -- so

15   I can finish with building the positive person that I am trying

16   to replicate. I am a bit nervous but.

17         THE COURT:  It's okay. Is there anything else you'd

18   like to say?

19         THE WITNESS:  No, sir.

20         THE COURT:  I appreciate it.

21         THE WITNESS:  Thank you.

22         THE COURT:  Thank you. Sir.

23         ATTORNEY LIVERMORE:  Your Honor, I have nothing to

24   add to my written submissions to the court. Government requests

25   that Mr. Bernard be sentenced to the 120 months of court

1  pension based upon his offense conduct, and his lengthy

2  criminal history which is the court has gone over this

3  afternoon.

4       THE COURT:  I appreciate that. I understand thank

5  you.

6       ATTORNEY LIVERMORE:  Thank you.

7       THE COURT:  Oh Mr. Livermore what is your position?

8  It hadn't been an issue that I had known to consider or should

9  I say realize to consider, and it's candidly not something I

10 would typically do, but usually when I am asked to run a

11 sentence a concurrent to a state sentence I know what the state

12 sentence is. I -- I don't know what's going to happen. Do you

13 have any position at all with respect to counsel's request?

14      ATTORNEY LIVERMORE:  I believe counsel is correct

15 that the court does that have the discretion to run it

16 prospectively concurrent, however, the government's position is

17 this is going to be two separate -- separate situations, and

18 government suggests the court not exercise this discretion.

19      THE COURT:  Okay. I appreciate that. You know let me

20 - staple my sentences, and then -- and then explain it and

21 obviously this is a product of as I -- as I was reminded

22 yesterday when I started preparing again that I had prepared

23 once before I think as we all had right, and then in any event

24 I've taken a lot of time to go through everything and consider

25 the report and recommendation. Let me start by saying I -- I

1  don't -- I don't -- based on the two cases the huge sample size

2  of two cases that I've had in the last six I think calendar

3  days, and my certainly to the solicitor general who argued the

4  case I guess in the court very limited knowledge of Wooden

5  comparatively speaking. I -- I am not so -- I tend to think

6  that the government is taking an overly conservative approach

7  here. I don't know that this makes a lot of sense for the

8  reasons we kicked around earlier, but I am certainly not going

9  to overrule a joint objection particularly when I think that

10 the sentence is sufficient, but not greater than necessary to

11 accomplish the purposes of sentencing here today, and I'll go

12 further and say that there is a decent part of me which is glad

13 that the armed career criminal act doesn't apply because I -- I

14 would think despite Mr. Bernard's criminal history, despite the

15 seriousness of the weapons he possessed, for a lot of reasons I

16 would feel that a 15 year sentence would be too much for what -

17 - for this most recent offense okay, so, the issue then becomes

18 do I have on balance grounds to vary downward from what is the

19 guideline range, which is 120 months, and on balance I don't,

20 so, I am going to sentence Mr. Bernard 120 months

21 incarceration, three years of supervised release, and a 100

22 dollar special assessment. I find he has no ability to pay a

23 fine and is unlikely to be able to pay a fine in the future,

24 and I am not -- I am not going to take the step of attempting

25 to sentence to impose this sentence concurrent to whatever the

state board or probation and parole -- you know might -- might
do if -- if anything after this sentence because that's just a
separate transgression that Mr. Bernard will have to deal with
separately, but so let's talk about the factors that I
considered in imposing the sentence and -- and making sure that
-- you know I -- I find it appropriate, and -- and we start of
course with the nature and the circumstances of Mr. Bernard's
offense -- you know illegally possessing two handguns and a
rifle -- you know contributes to the proliferation of guns on
the streets of this city and shows -- you know Mr. Bernard's
indifference to the safety of his community, and -- you know he
did so while on parole for other state crimes which reflects to
me a lack of respect for the law that unfortunately has
characterized much of Mr. Bernard's adult life. His history and
characteristics there is nowhere to start other than with his
juvenile adjudication and eight previous adult criminal
convictions -- you know many of these were relatively smaller
drug sales. They were all serious drug offenses as that term is
used in the law, but I do recognize that Mr. Bernard wasn't a
major domo (phonetic) drug dealer, but he -- he did acknowledge
to the probation officer and the preparation of the presentence
investigation report that selling drugs has been his primary
occupation since at least 2000 -- you know but the -- he
convictions alone show me that Mr. Bernard has been -- you know
breaking the law for much of his adult life. He dropped out of

high school, though he did obtain a GED in prison, he's had
overall a -- a poor record on post offense supervision which is
-- you know a factor here in assessing his history and
characteristics. He's had a virtually non-existent employment
history, again -- you know he acknowledged in the PSR that his
primary occupation at least for the last 20 years or so has
been selling drugs, and he was candid with the probation office
on the affects of the amount of marijuana he was smoking and
how it made him too lazy to earn an honest living, but
nonetheless I have to take that into account -- you know as the
government points out and I regrettably have to agree I hate to
say things that can sound this harsh, but to this point -- you
know Mr. Bernard has contributed really, really little to
nothing to society, and -- you know he's 40, soon to be 41 in
ten days and -- and I am sorry to say that, but let me also
acknowledge though that there have been a number of obstacles
in Mr. Bernard's path to be sure counsel in her sentencing
memorandum points out the circumstances of his birth to his
mother when she -- I think she was 13 if I recall correctly,
and as is outlined in the PSR paragraph 61 through just start
with 61 is the difficult relationship his parents apparently
had and its effect on him as -- as a child his father's history
of drug use, and the fact that his father was a very poor role
model for him and in fact I think influenced his decision to be
on the streets, and selling and or using drugs. The environment

in which Mr. Bernard grew up in North Philadelphia rife with
violence and -- and drugs certainly had an impact on him as did
the domestic violence that he witnessed in his home between his
parents as Ms. Taylor-Smith touched on, and -- you know the --
the effects of the 2013 shooting take up a good part of the
PSR, and shown me that -- you know this is something that has a
very -- has had a very traumatizing effect on Mr. Bernard and
something that hopefully we can continue to deal with going
forward. Mr. Bernard has his son he mentioned he was 20 years
old at the time the PSR was prepared. He may be 21 by now, but
and purportedly had a good relationship with his son and
hopefully that will continue, but -- you know while there have
been as I say a lot of challenges -- you know Mr. Bernard bears
the lion share of the responsibility for the choices he's made,
and that's unfortunately what has led us -- you know here
today. The need for the sentence to reflect the seriousness of
the offense again guns and gun violence particularly when
paired with drug dealing, not that this specific offense
involved just the weapons, but the presence of those weapons
the number and the types of the weapons just a very serious
offense and -- you know talking about promoting a respect for
the law and providing just punishment. The last one first I
mean the punishment is just, and I am sincere when I say I am
glad that I wasn't -- that my hands weren't tied into a 15-year
sentence here today. I think it would have been excessive not

1  withstanding the long criminal history, but just -- you know
2  many of those offenses were for relatively smaller amounts of
3  drugs, and I don't like the circumstances in which the weapons
4  were found and the reasons the police were called to the house
5  to begin with, but I think this sentence is -- is just and is
6  sufficient, but not greater than necessary. I have to consider
7  the need to afford adequate deterrence to criminal conduct, and
8  -- and we talk about and this is a big part of this sentence
9  today -- you know general deterrence and -- and the need for
10 people who think about dealing drugs which can you give you
11 this kind of criminal history or illegally possessing dangerous
12 weapons -- you know need to know that this is what can happen
13 so that maybe they think twice before they go down this path,
14 particularly if defense get you. It becomes a different
15 ballgame here and -- you know people need to realize that this
16 is not something society will accept and I -- I am grateful to
17 the -- to the government for -- for charging these cases
18 because I think we need to start to rethink how we're
19 addressing gun violence in this city to the extent that at the
20 local level -- you know we're addressing it at all, but general
21 deterrence is important here, but specific deterrence is more
22 important even then general deterrence, and specific deterrence
23 -- you know Mr. Bernard is due in my best to make sure that you
24 don't go back to what you were doing when you get out of here,
25 and -- you know I've gone over your criminal history, all those

criminal convictions, the paroles, the probations, the
violations of both, even when there was punishments added for a
parole or probation violation none of that has done anything to
stop you from going back to doing what you do, and -- you know
I -- I wonder often if the feds had gotten you 15 years ago,
and you had faced a more serious jail sentence would that have
stopped you -- you know. I don't know, I am sure you don't
know, but look you're 41 in ten days. This is the longest
sentence you will have served, you're two years in I think
roughly if not a little more, two and a half.

ATTORNEY TAYLOR-SMITH:  Yes, Your Honor.

THE COURT:  Years in okay, so, let's say there is
seven and a half years left -- you know with good time credit,
which hopefully you'll earn, you're not going to be an old guy
when you get out. You're going to have -- you know your adult
life still mostly ahead of you, and but here is the thing, if
when you get out you go back to doing this, and these guys get
you again next time the armed career criminal act will
unquestionably apply because they'll charge it differently,
they'll prove it differently, and -- you know I don't expect
you to -- to be happy with me, but you got a really good break
in here today. You were looking at 15 years mandatory minimum,
but for this quirk in the supreme court's decision and the
Justice Department's interpretation of it, and the U.S.
Attorney's policy here -- you know you'd have been at 15 years

1  mandatory, minimum. What I am saying to you is if you get out
2  and you go back to this, and they get you again right off the
3  top you're going to be looking at 15 years mandatory minimum. I
4  don't know what your guideline range will be then, there will
5  be more criminal history points. I guess you can't get a higher
6  criminal history category, but what I can say is you will be
7  looking at 15 years as -- as a floor, not a ceiling, and if
8  you're looking at that when you're in your mid to late 40s --
9  you know you do the math, and you're coming out you're in your
10 60s. Your son will be -- your son will have long forgotten
11 about you at that point frankly, but that's what -- that's what
12 at issue here today right.
13          THE WITNESS:  Yes.
14          THE COURT:  That's -- that's why I am doing my best
15 to make sure that this sentence deters you from going back to
16 doing what you were doing, nobody wants to see that, nobody is
17 happy if -- if that happens. The public -- you know when
18 considering the need to protect the public from further crimes
19 the defendant might commit, I am -- you know unfortunately your
20 criminal history leaves me with no other conclusion that -- but
21 that the public needs to be protected from you -- you know from
22 drug dealing, to possession of weapons, to the combination of
23 the two of them -- you know you've been a danger to society to
24 this point and the public does need to be protected from you. I
25 -- I hope and believe that this is the appropriate amount of

time for that, but it's certainly the right time in terms of
your sentence based on your history. With respect to the need
to provide the defendant with educational or vocational
training, medical care, or other correctional treatment there
is a need to provide the defendant with -- with all of that.
The defendant is in generally good physical health. He's I
think physically recovered from his -- his wounds, but in
paragraph 73 through 77 made clear that his physical condition
is not an issue for sentencing, but his mental and emotional
health is, and I think that -- you know largely comes from
being shot and I am no expert, but it probably comes a little
bit from the trauma you witnessed when you were little and the
domestic violence you saw in your house in which you -- you
know what you know your father was doing, so, -- you know there
is a need for continued, and I know you're still taking the
medications; right?

            THE WITNESS:  Yes, sir.

            THE COURT:  Okay. Well, that's good and there is a
need for continued mental health treatment and counseling,
while -- while in the institution and we'll have that as a term
of your supervised release as well. Similarly there is a need
for continued substance abuse treatment I know you've had some
in the past, but -- you know in paragraphs 81 through 87 -- you
know you've had a pretty significant substance abuse problem
for a long time. You've tried to get under control, there was a

period if -- if it's correct in paragraph 87 that you didn't
test positive for a good period of time there when you were
under state supervision. If that's true that shows that you can
do it, but -- you know you need to continue with that and try
to get passed that if -- if you don't and you go back to using
drugs I think the odds are pretty high that if you go back to
using drugs you're going to then need to go back to selling the
drugs so that you have drugs to use, and that will lead you
back to these guys. So that's -- that's really important, and
with respect to educational and vocational training as I
mentioned the defendant while obtaining his GED in prison
unfortunately dropped out of school in 10th grade, and has had
really no educational or employment background of any -- of any
note, so, -- you know we need to try to do all of this and --
and -- you know programming in the institution will help you as
well hopefully the hope -- the help that the probation office
can provide. I want to make sure that condition is in here,
yes. We'll read that condition of supervised release. Oh and by
the way speaking of programming. I did take note of this too
all right the classes that you've -- and the programs that
you've committed -- completed, excuse me, at the FDC, and I am
sure there are others that in addition to whatever treatment or
counseling you're -- you're participating in can be a little
more directly relevant to what you need to do going forward,
okay. You know with respect to sentencing, sentencing ranges,

1  policy statements, unwarranted disparities. It's a unique

2  sentence guideline range in -- in a send. It's one number. It's

3  the bottom of the guidelines. It's the top of the guidelines.

4  It's the middle of the guidelines, but -- but it's appropriate

5  for all of the reasons I've discussed here -- here today. Those

6  are all the points I had that I wanted to be sure I addressed.

7  Counsel anything you think I missed or didn't mention or didn't

8  explain well?

9         ATTORNEY LIVERMORE:  Nothing -- nothing.

10        ATTORNEY TAYLOR-SMITH:  No, Your Honor.

11        THE COURT:  Okay. And obviously no need to provide

12  restitution so that's not a factor, so, any -- any objections

13  to any substantive or procedural issues?

14        ATTORNEY TAYLOR-SMITH:  None from the defense.

15        ATTORNEY LIVERMORE:  No objection.

16        THE COURT:  Okay, very good. Then Ms. Taylor-Smith

17  and if you and Mr. Bernard could please come forward. We can

18  impose the sentence. Did you need this back, Natasha? Pursuing

19  to the sentencing reform act of 1984. It is the judgment of the

20  court that the defendant Omar Bernard is here by committed to

21  the custody of the bureau of prisons, to be imprisoned for a

22  term of 120 months on count one. Upon release from imprisonment

23  the defendant shall be placed on supervised release for a term

24  of three years on count one, within 72 hours of release from

25  the custody of the bureau of prisons, the defendant shall

report in person to the probation office in the district to
which the defendant is released. While on supervised release,
the defendant shall not commit another federal, state, or local
crime, shall be prohibited from possessing a firearm or other
dangerous device, shall not possess an illegal controlled
substance, shall submit to the collection of a DNA sample at
the direction of the probation office and shall comply with the
other standard conditions that have been adopted by the court.
The defendant must submit to one drug test within 15 days of
commencement of supervised release, and at least two tests
thereafter as determined by the probation officer. The
defendant shall also comply with the following special
conditions; he shall participate in a mental health program for
evaluation and or treatment and abide by the rules of any such
program until satisfactorily discharged. The defendant shall
refrain from the illegal possession and or use of drugs, and
shall submit to urinalysis or other forms of testing to ensure
compliance. The defendant shall participate in drug treatment,
and abide by the rules of any such program until satisfactorily
discharged. The defendant shall participate in a program at the
direction of the probation officer aimed at learning a vocation
or improving the defendant's literacy, education level, or
employment skills in order to develop or improve skills needed
to obtain and maintain gainful employment. The defendant shall
remain in any recommended program until completed or until such

1 time as the defendant is released from attendance by the

2 probation officer. Again, I find that the defendant does not

3 have the ability to pay a fine so I will waive the fine in this

4 case, but the defendant shall pay to the United States a total

5 special assessment of $100 which will be due immediately. Mr.

6 Bernard, you're advised that you may appeal the court's

7 sentence pronounced today, for an appeal to be effective you

8 must file a notice of appeal with the clerk of the court, not

9 later than 14 days from the date judgment is entered, failure

10 to file a notice of appeal will result in you losing your right

11 to appeal the court's sentence to the court of appeals. You are

12 also advised that you have a right to be represented by counsel

13 on an appeal, and if you are financially unable to hire private

14 counsel, you may submit a financial affidavit, and if you

15 qualify the court will appoint counsel to handle the appeal.

16 Was there a forfeiture motion?

17          ATTORNEY LIVERMORE:  There was not, Your Honor.

18          THE COURT:  There is; right?

19          ATTORNEY LIVERMORE:  Oh there is?

20          THE COURT:  There is one. There should be; right?

21 Yeah, so we have -- we have a motion for forfeiture pending.

22          THE CLERK:  File two years ago.

23          ATTORNEY LIVERMORE:  It was filed when?

24          THE CLERK:  Two years ago.

25          THE COURT:  Long time ago. We'll take care of that.

1          ATTORNEY LIVERMORE:  Thank you, Your Honor.

2          THE COURT:  Anything else that you forgot about that

3  I need to know about?

4          ATTORNEY LIVERMORE:  Quite possibly.

5          THE COURT:  No.

6          ATTORNEY LIVERMORE:  None that I can think of.

7          THE COURT:  Yeah, I can't think -- can you think of

8  anything else?

9          MS. POWELL:  No, Your Honor.

10          THE COURT:  Okay. We'll, take care of that we'll --

11  we'll enter that forfeiture order and with that then we're

12  adjourned. Thank you very much.

13          THE CLERK:  All rise.

14

15      (Court adjourned)

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

    "I, Jason Adams, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter."


_____      3-30-23
    Signature                     Date


Jason Adams
  Typed name